UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 11-10195-RWZ

UNITED STATES OF AMERICA

v.

RONALD MARTINEZ

MEMORANDUM OF DECISION

November 16, 2012

ZOBEL, D.J.

Defendant Ronald Martinez has been charged in a superseding indictment with two counts of conspiracy to collect debt by extortionate means in violation of 18 U.S.C. § 894(a) and two counts of possession with intent to distribute cocaine base, also known as "crack cocaine," in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting). He now moves to suppress all evidence obtained during a police search of his rental vehicle on April 10, 2011 (Docket # 235). Based on the evidence adduced at a hearing, I find the following facts and deny defendant's motion to suppress.

## I. Findings of Fact

In early April 2011, federal agents from the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") intercepted several phone calls between Safwan Madarati ("Madarati"), the primary target of a drug trafficking investigation, and various associates. Based on the wiretapped calls, the agents believed that Madarati

planned to forcibly collect drug money from an associate named Victor Loukas ("Loukas") by sending two men to break into Loukas's residence at 14 Carlton Terrace in Watertown, Massachusetts, on April 9, 2011. In order to protect Loukas from what they believed was an imminent threat to his safety, federal agents arranged for state police to pull Loukas over on the pretense of a traffic violation. ICE Special Agent Michael Krol then informed Loukas that his life may be in danger and placed him in a hotel for the night.

Agent Krol returned to his office, where he monitored a surveillance camera that had been installed outside of Loukas's residence. In the early morning hours of April 10, 2011, he observed two unidentified males walking slowly back and forth on Loukas's driveway. Agent Krol immediately placed a 911 emergency call to the Watertown Police Department ("WPD") and reported to the dispatcher that he had observed two men in dark clothing attempting to break into 14 Carlton Terrace. Agent Krol did not identify himself as a federal law enforcement officer to the 911 dispatcher.

At approximately 12:30 am, WPD Sergeant Jeffrey Pugliese received a call via radio from the 911 dispatcher about the pending break-in and quickly went to 14 Carlton Terrace. WPD Officer Joseph Reynolds was already on the scene, and Sergeant Pugliese heard him shout, "Stop! Police!" Officer Reynolds informed Sergeant Pugliese that he had seen two men running behind the house. WPD Officer Keith Parent, who had also responded to the dispatcher's radio call, observed one of the men, a large black male later identified as defendant, jumping over a fence at the edge of the property and into a neighboring school parking lot. Officer Parent drew his

2

gun, pursued defendant, and ordered him to stop.  Defendant stopped running and moved to the ground, where Officer Parent arrested and handcuffed him.

Officer Parent noted that he had seen another figure running from behind the house toward Lowell Avenue, a street one block north of and parallel to Carlton Terrace.  The policemen began conducting a sweep of the area searching for the second suspect.  Officer Parent meanwhile placed defendant into the back of a WPD patrol car parked on Lowell Avenue.  Around that time, approximately ten minutes into the sweep, Officer Reynolds observed a white motor vehicle with New York license plates parked nearby on Lowell Avenue with the lights off and the engine running.  The record is unclear as to whether other cars were parked nearby on Lowell Avenue, but all parties agree that the vehicle was parked legally.  Officers Reynolds and Parent, as well as Sergeant Pugliese, approached the vehicle, a 2011 Toyota Venza.  Officer Parent shined a flashlight through its tinted windows and observed a young black male inside lying down in the rear.[1]  Officer Parent drew his gun and ordered the young male, later identified as Devon Simmons[2], out of the vehicle and onto the ground.  Simmons complied and was handcuffed for officer safety, patted down, and charged with attempted breaking and entering when he could not explain his presence there.[3]

---

[1] There is some discrepancy as to whether the young male was lying on the back floor or the back seat of the Toyota.

[2] Simmons is at times identified in the briefs as "DS" or "DV."

[3] The government later determined that Simmons was not the second man who had attempted to break into 14 Carlton Terrace, and the charge against him was dismissed.

The officers ran a check on the license plate of the Toyota and learned it was a rental car. Since the two individuals presumably associated with the vehicle (defendant and Simmons) were both in custody and the policemen had no information about the identity of the renter, Sergeant Pugliese directed that the vehicle be towed to the police station rather than left on the street with the keys inside. He also authorized the officers to search the vehicle for evidence of the attempted breaking and entering. During a preliminary inventory search of the Toyota on-site, Officer Parent found a clear plastic bag containing crack cocaine in the sunglasses holder and $5,000 in cash in the center console. After the Toyota was towed to the police station, Officers Parent and Reynolds conducted a more complete inventory search and discovered an M-Tech folding knife and paperwork addressed to defendant, as well as a cell phone, additional cash, and latex gloves.

## II. Conclusions of Law

Defendant now moves to suppress all evidence seized from the Toyota Venza. While he does not dispute the legality of his own arrest, he contends that the WPD lacked probable cause to arrest Simmons and subsequently search the vehicle.

### A. Lawfulness of the Arrest of Devon Simmons

In general, "probable cause [to arrest] exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v. Young, 105. F.3d 1, 6 (1st Cir. 1997). Moreover, courts "consider the totality of the circumstances in evaluating whether the government

4

demonstrated a sufficient '[p]robability ... of criminal activity.'" United States v. Fiasconaro, 315 F. 3d 28, 35 (1st Cir. 2002) (quoting Illinois v. Gates, 462, U.S. 213, 235 (1983)).

Defendant argues that at the time of Simmons's arrest, the WPD officers knew only that a second man had been involved in the attempted break-in at 14 Carlton Terrace and had no details about the man's race, weight, clothing, or any distinguishing characteristics. Nor did the police have any information about any vehicle connected to the crime. Defendant also notes that when discovered, Simmons did not engage in furtive gestures, make incriminating statements, or appear to be out of breath from fleeing a crime scene.

Nonetheless, the totality of the circumstances was sufficient to give the police probable cause to arrest Simmons. The officers were responding to an early morning emergency call that two men were attempting to break into 14 Carlton Terrace. They observed two men running away from the residence; when one (defendant) was apprehended, the officers continued to search for the second suspect. During a sweep of the immediate area, they discovered a Toyota Venza only one block away from the place of defendant's arrest, located in the direction towards which the second suspect had fled. While he could not recall the presence of any other cars, Sergeant Pugliese testified at the hearing that he felt there was little reason for someone to park on Lowell Avenue, a residential street, at that hour given that the nearby school and park were closed. More significantly, both Sergeant Pugliese and Officer Parent testified that their attention was drawn to the Toyota because they could hear the engine running

5

although its lights were off.  Once he arrived at the Toyota, Officer Parent observed Simmons lying down inside, apparently attempting to hide.  When Simmons was not able to explain his presence there, the officers – believing him to be the second suspect – arrested him.  Taken together, these factors are sufficient to warrant a reasonable belief that Simmons was involved in the attempted break-in that had just occurred.

**B. Lawfulness of the Search of the Vehicle**

Under Arizona v. Gant, 556 U.S. 332, 335 (2009), police may search a vehicle incident to a recent occupant's arrest if "it is reasonable to believe that the vehicle contains evidence of the offense of arrest."  See also Thornton v. United States, 541 U.S. 615, 623-624 (2004) ("So long as an arrestee is [a] recent occupant of a vehicle [ ], officers may search that vehicle incident to that arrest.").  I find that, having arrested Simmons for attempted breaking and entering, the WPD officers reasonably believed that evidence of that crime (which had just taken place) would be in the Toyota in which Simmons was found.

The officers were also entitled to search the Toyota pursuant to the "automobile exception" to the warrant requirement: "[i]f there is probable cause to believe that a vehicle contains evidence of criminal activity, agents can search without a warrant any area of the vehicle in which the evidence may be found."  United States v. Polanco, 634 F.3d 39, 42 (1st Cir. 2011) (internal quotations and citations omitted).  Here, the officers had such probable cause in light of the earlier events that night.  The proximity of the Toyota to 14 Carlton Terrace, its location in relation to the second suspect's

6

direction of flight, the fact that the engine was running, and the presence of Devon Simmons apparently hiding in the rear all lent support to a "fair probability," Gates, 462 U.S. at 238, that evidence of criminal activity would be found in the vehicle. Sergeant Pugliese testified that he expected to find burglary tools, such as latex gloves, inside the Toyota and he authorized a search of the vehicle for evidence of the attempted break-in.

Even if the search of the Toyota on-site was invalid, the contraband would have been found later as a part of a lawful inventory search following impoundment. Officers may impound a vehicle for "community caretaking" purposes, including protection against vandalism or theft or when there is no one immediately on hand to take possession of the car, "so long as the impoundment decision was reasonable under the circumstances." United States v. Coccia, 446 F.3d 233, 239-40 (1st Cir. 2006) (collecting cases). With both defendant and Simmons in custody, it was reasonable to conclude that there was no one immediately available to take the Toyota. See Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003) ("Case law supports the view that where a driver is arrested and there is no one *immediately* on hand to take possession, the officials have a legitimate non-investigatory reason for impounding the car.") (emphasis in original). Sergeant Pugliese also testified that he did not want to leave the vehicle with the keys in it on the street overnight.[4]

---

[4] The impoundment was also consistent with the WPD's Motor Vehicle Inventory and Impoundment Policy (Docket # 235-3), which authorizes impoundment when the operator of the vehicle is arrested and there is not a properly licensed passenger willing or able to take immediate custody of the vehicle. "An impoundment decision made pursuant to standardized procedures will most likely, although not always, satisfy the Fourth Amendment." Coccia, 446 F.3d at 238.

That Sergeant Pugliese may have directed the towing of the Toyota in part because he believed it was involved in a crime does not invalidate the impoundment. "A search or seizure undertaken pursuant to the community caretaking function is not infirm merely because it may also have been motivated by a desire to investigate crime." Coccia, 446 F.3d at 240-41. See also United States v. Rodriguez-Morales, 929 F. 2d 780, 787 (1st Cir. 1991) ("As long as impoundment pursuant to the community caretaking function is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking motives will not invalidate the seizure."). There were legitimate community caretaking justifications for impounding the Toyota and there is no evidence that these justifications were merely pretext for an investigatory search.

Once the vehicle was in police custody, the officers were authorized to conduct an inventory search. Colorado v. Bertine, 479 U.S. 367, 371-72 (1987). See also WPD Motor Vehicle Inventory and Impoundment Policy ("[A]ll motor vehicles which are lawfully, towed, removed, impounded ... or placed in the custody of the police department, shall be inspected and inventoried according to the procedures in this policy."). Because the WPD officers acted reasonably in towing the Toyota and conducting an inventory search, defendant's challenge fails.

## III. Conclusion

Defendant's motion to suppress evidence (Docket # 235) is DENIED.

    November 16, 2012                               /s/Rya W. Zobel

DATE                                            RYA W. ZOBEL
                                                UNITED STATES DISTRICT JUDGE